IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

QUENTIN C. PRESSLEY,      :
                          :
     Appellant,           :
                          :       CIVIL ACTION
v.                        :
                          :       NO. 1:13-CV-514-TWT-ECS
CAROLYN W. COLVIN,        :
Acting Comm'r of Social Security, :
                          :
     Respondent.          :

**FINAL REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

**I.**
**Introduction**

Plaintiff-appellant ("Appellant") Quentin Pressley brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This case is presently before the Court upon the administrative record and the parties' pleadings and briefs. For the reasons expressed herein, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

**II.**
**Procedural History**

On June 24, 2010, Appellant filed an application for Supplemental Security Income and Disability Insurance Benefits, alleging disability due to cerebral palsy and eye problems beginning

on June 1, 2006. (T. 152-53).[1] His applications were denied initially and upon reconsideration. (T. 96-103, 106-11). He received an unfavorable decision by an Administrative Law Judge ("ALJ") on April 23, 2012, (T. 15-26), and the Appeals Council ("AC") denied his request for review of that decision on December 15, 2012 (T. 1-5). On February 16, 2013, Appellant, having exhausted all administrative remedies, filed his complaint in this Court seeking a review of the Commissioner's decision. [Doc. 1]. The final decision of the Commissioner is now ripe for review.

## III.
## Factual Background

Appellant was thirty-three (33) years old at the time of the administrative evidentiary hearing. (T. 35). He had a high school education and three years of college. (T. 44). Appellant was last employed by Secure America where he worked as a security guard and freight elevator operator until 2006. (T. 38, 41-42).

**A.   Relevant Medical History**

**1.   St. Francis Xavier Hospital Medical Records 1982 — 1983**

On September 27, 1982, when Appellant was about five years old, he was diagnosed with cerebral palsy with mild spastic hemiplegia

---

[1]    The Transcript of Administrative Record is hereinafter abbreviated as "(T. [page number])."

on the right side. (T. 273).[2] He was diagnosed after being observed standing on his right tiptoes, walking with his right arm flexed at the elbow, and not using his hands. (T. 273). On July 11, 1983, he was admitted to St. Francis Xavier Hospital to undergo an Achilles tendon lengthening procedure on his right leg. (T. 269, 274-84). He was placed in a short leg cast, and the procedure was noted as improving his right Achilles tendon tightness. (Id.).

### 2. Comprehensive Neurology Specialists Medical Records — 2011-2012

On August 2, 2011, Appellant first visited Mark Harris, M.D., at Comprehensive Neurology Specialists. (T . 295). Appellant self-referred to Dr. Harris and provided his medical history to Dr. Harris himself. (Id.). He reported that he was diagnosed with cerebral palsy as a child and experienced generalized pain due to the disorder. (Id.). He told Dr. Harris that he was there "because he would like to be able to file for disability because of pain...." (Id.). Additionally, he told Dr. Harris that he experienced pain while sleeping and when he wakes up and that he was referred to Dr. Harris by his lawyer. (Id.). Dr. Harris noted that Appellant's

---

[2]     Cerebral palsy is a group of nervous system disorders that can affect body movement, including ability to balance, depth perception, and posture, among other physical abilities. Cerebral palsy, MedlinePlus, http://www.nlm.nih.gov/medlineplus/cerebralpalsy .html (last visited Apr. 10, 2014). Spastic hemiplegia is a form on cerebral palsy that causes muscle tightening, abnormal gait, tight joints, and muscle weakness. Id.

medical history was incomplete because of missing records. (Id.).

Appellant told Dr. Harris he experienced pain in his lower back and right foot and leg at a level eight on a ten-point pain scale. (Id.). He stated that sharp pain woke him up at night and remained throughout the day. (Id.). He complained of muscle pain, tingling in his right foot, and weakness and fatigue on his right side, but denied joint pain. (Id.). He reported failing the fifth grade and taking "special" classes where he got extra help, in high school. (Id.).

Dr. Harris performed a physical examination of Appellant. He observed that Appellant was sensitive to light; had uncoordinated muscle movement, headaches, memory loss, and weakness; and suffered from feelings of stress, inability to experience pleasure, and sadness. (Id.). Dr. Harris also noted that Appellant's gait was affected by a right leg limp, he wore a lift in his right shoe, and had muscle atrophy in his right lower leg. (T. 295-97). Dr. Harris assessed his strength at 5/5 for all extremities, except his right ankle strength had 3/5 strength for flexing in the upward direction and 1/5 strength for flexing in the sideways directions and for lifting the big toe. (T. 297).

At the conclusion of Appellant's first visit, Dr. Harris did not prescribe any medication or order any diagnostic tests. (Id.). Dr. Harris noted that Appellant was a "very poor historian" and was

4

not able to provide Dr. Harris with much information about his pain. (Id.). Dr. Harris concluded, "[h]e clearly has some musculoskeletal issues of the right leg and probably some degree of baseline cognitive impairment. Given the lack of information I am unable to say he is completely and totally disabled from any and all work at the present time." (Id.). Dr. Harris also recommended that Appellant continue to use an orthotic for his right foot. (T. 298).

Appellant visited Dr. Harris for a second time on January 26, 2012. (T. 300-03). Appellant provided Dr. Harris with medical records from his diagnosis as a child in 1982. (T. 300). Dr. Harris noted that Appellant was diagnosed with cerebral palsy more than twenty-five years ago, and the condition had been stable and nonprogressive and was "of moderate intensity." (Id.). Dr. Harris noted that in addition to cerebral palsy, Appellant complained of lower back pain for which he had not previously sought treatment. (Id.). Upon physical examination, Dr. Harris noted that Appellant's right ankle strength was 2/5. (T. 302). He also noted that Appellant's cranial nerves were all intact. (Id.). Additionally, Appellant had decreased sensation to pinprick in the right foot and hand. (Id.).

In his "assessment," Dr. Harris opined that Appellant "is not able to be gainfully employed due to both COGNITIVE AND PHYSICAL DEFICITS FROM HIS CEREBRAL PALSY." (Id. (emphasis in original)). Dr.

5

Harris prescribed an anti-inflammatory medication and ordered an x-ray of Appellant's lower back. (T. 302-03). The x-ray showed unremarkable results. (T. 299).

**B.   Opinions Regarding Appellant's Ability to Work**

**1.   Neurological Consultative Examination — Dr. Scott Cooper**

On July 29, 2010, Scott D. Cooper, M.D., performed a consultative examination on Appellant in connection with his allegation of disability due to cerebral palsy. (T. 241-46). Appellant told Dr. Cooper that he had cerebral palsy and that his right side "react[ed] when he g[ot] tired." (T. 242). Appellant also told Dr. Cooper that he was forgetful and sometimes "los[t] track of what he [was] saying." (Id.). Dr. Cooper noted his history of cerebral palsy, occasional back pain, asthma, and sinus problems. (Id.).

Dr. Cooper performed a neurologic examination on Appellant and observed that his cranial nerves were intact and that his muscle tone was normal. (Id.). Dr. Cooper also noted that Appellant had "mild atrophy, most marked in his right calf muscle," "4+/5" grip strength in his right hand, and 4/5 right foot drop. (Id.). But Dr. Cooper noted that Appellant's strength was, otherwise, 5/5. (Id.). Finally, Dr. Cooper concluded that Appellant's gait test was normal and he was well-balanced. (T. 243). Dr. Cooper opined that Appellant had cerebral palsy with "very mild right sided weakness." (Id.).

6

Dr. Cooper also examined Appellant's mental status by administering a Mini-Mental Status Exam. (Id.). Appellant scored a twenty-five out of thirty on the exam, with deficits in "recall and orientation," but Dr. Cooper stated that he was "not certain how much of the mini-mental status exam was a real deficit or not." (Id.). Dr. Cooper further opined that Appellant could handle his own financial affairs. (Id.).

### 2.   Physical Residual Functional Capacity Assessment — Dr. Russell Wallace

On August 4, 2010, state agency medical consultant Russell Wallace, M.D., reviewed the medical evidence and performed a Physical Residual Functional Capacity ("PRFC") Assessment. (T. 247-54). Dr. Wallace concluded that Appellant could occasionally lift fifty (50) pounds and frequently lift twenty-five (25) pounds. (T. 248). He also concluded that Appellant could stand and sit with normal breaks for about six (6) hours in an eight-hour workday and was not limited in his ability to push and/or pull. (Id.). Dr. Wallace concluded that Appellant could climb ramps, stairs, ladders, ropes, and scaffolds frequently. (T. 249). Additionally, Appellant could balance, stoop, kneel, crouch, and crawl frequently. (Id.). He found that Appellant should avoid concentrated exposure to hazards, such as machinery and heights. (T. 251). Dr. Wallace found no manipulative, visual, or communicative limitations. (T. 250-51).

AO 72A
(Rev.8/82)

Additionally, Dr. Wallace opined that the results of the foot drop and grip strength tests administered by Dr. Cooper during his consultative examination should not preclude Appellant from being able to perform the proposed Residual Functional Capacity. (T. 252).

### 3.   Psychiatric Review Technique — Dr. John Cooper

On August 18, 2010, state agency medical consultant John Cooper, Ph.D., completed a Psychiatric Review Technique. (T. 255-68). Dr. Cooper concluded that Appellant had no medically determinable impairment. (T. 255). Dr. Cooper found Appellant to be mildly limited in maintaining concentration, persistence, or pace. (T. 265). He also found that Appellant was not limited in his activities of daily living and maintaining social functioning and did not experience episodes of decompensation, each of extended duration. (Id.). In making these conclusions, Dr. Cooper cited medical records indicating that Appellant had no limitations with understanding, coherency, concentrating, talking, or answering questions. (T. 267). Dr. Cooper noted that Appellant was able to care for his children, take medication, groom himself, prepare meals, wash dishes, do laundry, and mow the law without assistance. (Id.). Additionally, he noted that Appellant could drive a car, go shopping, handle finances, and had several hobbies, including playing video games, watching television, and using the computer. (Id.). Finally, Dr. Cooper noted that Appellant's medical records

showed no psychiatric diagnosis, treatment, or medication. (<u>Id.</u>).

**C.   Relevant Hearing Testimony**

   **1.   Appellant's Testimony**

   At the disability hearing on February 28, 2012, before the ALJ and the VE, Appellant testified that he suffered from cerebral palsy with a shortened right leg and an abnormal walk caused by pain. (T. 35). He estimated that he could walk for about an hour and a half. (<u>Id.</u>). He testified that he did not have perfect balance because of an operation he had on his right leg as a child, related to having cerebral palsy. (T. 36). He also testified that he experienced a sharp pain on the right side of his body that also affected his back. (<u>Id.</u>).

   Appellant testified that, before he stopped working in 2006, he had worked for several security companies. (T. 39, 42-44). He told the ALJ that he first worked for a security company called Cogniza for two years. (T. 43). Appellant testified that the job required him to sit and stand, which caused "multiple pains here and there" that got worse as he aged, but he ultimately left Cogniza because "they [were] losing contracts." (T. 43-44). Appellant then stated that he worked for Secure America, first as a "rover" and then as a freight elevator operator, for about a year before "the pain" caused him to stop working. (T. 38-39). After working as a rover for almost a year, Appellant stated that his body began to

9

"slow down" and that he wasn't as "aggressive" as he needed to be, so he became a freight elevator operator, which required him to stand for two four-hour shifts with a one-hour break in between. (T. 38-39, 41-42). After about a year, Appellant quit working at Secure America "based on [his] health condition." (T. 42). Appellant testified that he has also worked at Domino's Pizza, delivering pizzas, at the United Parcel Service, and at Tires Plus. (T. 45, 46). When asked why he believed he could not work full time, Appellant stated that he thought he would get fired because he would not be able to make it on time every day, and on some days, his body is not "up to par." (T. 47).

Appellant testified that he finished high school and had taken three years of automotive training classes, where he obtained a certificate for putting Freon in vehicles. (T. 44-45). He stated that he lived with his girlfriend, two young children, and a stepchild. (T. 46). Appellant told the ALJ that his girlfriend worked full-time, and that he took care of his one-year-old son during the day. (T. 46-47). He also stated that he drove the other two children to day care each day. (T. 47).

Appellant stated that he saw a doctor for the first time since his cerebral palsy diagnosis in 1982 in August of 2011. (T. 49). He testified that he had visited Dr. Harris twice. (Id.). Dr. Harris had prescribed pain medication for him, but he still felt pain.

10

(T. 48). Appellant stated that he had not taken any medication prior to 2011 because he was "not the type to ... grab pills." (Id.).

## 2.   Testimony of Vocational Expert Dr. Brooks

Vocational Expert ("VE") Dr. Brooks also testified at the hearing on February 28, 2012. (T. 50-55). After he was sworn in, the ALJ asked the VE to describe Appellant's past work. (T. 51). The VE testified that Appellant previously performed work as a "security guard," which the Dictionary of Occupational Titles (DOT) classified as light, semi-skilled work. (Id.). The VE testified that Appellant had performed work as a "freight elevator operator," which the DOT classified as light, unskilled work. (Id.). The VE also testified that Appellant had performed work as a "food deliverer," which the DOT classified as light, unskilled work. (T. 52).

The ALJ then asked the VE to consider the following hypothetical:

> [A]ssume a person of the claimant's age, education and work experience, who was able to perform work at the medium exertional level with the following additional limitations. All postural limitations limited to frequently and a need to avoid concentrated exposure to hazards. Would that person be able to do any or all of the claimant's past jobs that we discussed?

(T. 52). To this question, the VE responded that the hypothetical claimant would be capable of performing his past jobs as a food deliverer and in the UPS warehouse. (Id.).

The ALJ then asked the VE if that hypothetical person could

11

perform other jobs. (Id.). The VE answered that the hypothetical claimant could also perform the jobs of "hand packager," which constituted medium, unskilled work; "laundry laborer," which constituted light, unskilled work; and "cashier," which constituted light, unskilled work. (T. 52-53).

On cross-examination, Appellant's counsel asked the VE whether Appellant's past work was available to a hypothetical claimant whose medical records said he was "not able to be gainfully employed due to both cognitive and physical deficits." (T. 54). The VE replied, "[t]hen he can't work." (Id.). Appellant's counsel then asked the VE to consider a hypothetical claimant if he also had an abnormal gait. (Id.). The VE responded that such impairment would not preclude the jobs he listed. (Id.). Finally, Appellant's counsel asked the VE whether a claimant could perform the jobs he listed if that claimant would miss four to five days of work each month. (Id.). The VE responded that such a claimant could not perform those jobs. (T. 55).

## IV.
### Standard for Determining Disability

An individual is considered disabled for the purposes of disability payments if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

AO 72A
(Rev.8/82)

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Further, the impairment must be of such severity that it precludes the claimant from performing his previous work and, considering his age, education, and work experience, any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3) and 1382c(a)(3)(B)-(C).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that he is unable to perform his former type of work. Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982). If the claimant satisfies his burden of proving disability with respect to his former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given his age, education, work experience, and impairment, has the capacity to perform other types of jobs that exist in the national economy. Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five-step sequential process must be followed when evaluating a disability claim. 20 C.F.R. §§ 404.1520(a) and 416.920(a). In the sequential evaluation, the Commissioner must consider in order:

13

(1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.152(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits his ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairment meets the listing of impairments found in 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform his past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of his age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f). If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

**V.**
**The ALJ's Decision**

In his April 23, 2012, decision, the ALJ found Appellant not under a disability within the meaning of the Social Security Act at any time. (T. 26). The ALJ made the following specific findings:

(1) Claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

(2) Claimant has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) Claimant has the following severe impairments: cerebral palsy (20 CFR 404.1520(c) and 416.920(c)).

14

(4)   Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)   After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with some additional limitations. Specifically, claimant can lift and carry up to 50 pounds occasionally and 25 pounds frequently. He can stand, walk, and sit for 6 hours in an 8-hour day. Claimant, however, is limited to performing postural activities frequently; he must avoid concentrated exposure to hazards; and he is limited to unskilled work.

(6)   Claimant is capable of performing past relevant work as a food deliverer and warehouse worker. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(7)   Claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(T. 20-26).

In support of his step three finding that Appellant did not have an impairment that met or equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ stated that he specifically considered Listing 11.07 in evaluating Appellant's cerebral palsy. (T. 21).[3] The ALJ concluded that the medical

---

[3]   Listing 11.07 states: "Cerebral palsy. With: A. IQ of 70 or less; or B. Abnormal behavior patterns, such as destructiveness or emotional instability; or C. Significant interference in

evidence failed to demonstrate an IQ of 70 or less, abnormal behavior patterns, significant interference in communication, or significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. (T. 20-21).

## VI.
## Standard of Review

The scope of judicial review of the Commissioner's decision is limited. The Court's function is to determine if the decision is supported by substantial evidence and based upon proper legal standards. See Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The ALJ's decision will not be disturbed by the Court if, in light of the record as a whole, it appears to be supported by substantial evidence. See 42 U.S.C. § 405(g); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also MacGregor, 786 F.2d at 1053. In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th

---

communication due to speech, hearing, or visual defect; or D. Disorganization of motor function [in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station]." 20 C.F.R. § 404 App'x 1.

16

Cir. 1995).

**VII.**
**Discussion**

Appellant argues on appeal that the ALJ committed reversible error in two ways. First, Appellant argues that the ALJ erred by failing to find that he met Listing 11.07D requirements for cerebral palsy. [Doc. 12 at 3].[4] Second, Appellant contends that the ALJ erred in affording Dr. Harris's medical opinion only little weight. [Id. at 4]. As explained below, the undersigned finds that substantial evidence supports the ALJ's decision that Appellant is not disabled.

**A.     Did the ALJ Err by Failing to Find that Appellant Met Listing 11.07D for Cerebral Palsy?**

Appellant first argues that the ALJ erred in finding that Appellant did not meet Listing 11.07D for cerebral palsy. [Doc. 12 at 3]. Appellant asserts that Appellant met Listing 11.07D because the medical evidence shows that he had a significant and persistent disorganization of motor function in two extremities, resulting in

---

[4]     At the hearing held before the undersigned on April 10, 2014, counsel for Appellant argued that the ALJ erred by failing to find that Appellant met Listing 11.07B and 11.07D. But, in his brief setting forth all the errors which he contended entitled him to relief, Appellant did not raise any argument that he met or equaled Listing 11.07B. See [Doc. 12]. Furthermore, the undersigned finds no evidence in the record to support this argument. Therefore, as stated in the Court's "Order Directing Filing of Briefs and Scheduling Oral Argument," the undersigned will not address that issue in this report and recommendation. See [Doc. 11 at 3]

17

sustained disturbance of gross and dexterous movements, or gait and station. See [id.]. In response, the Commissioner submits that substantial evidence supports the ALJ's finding that Appellant did not meet or equal Listing 11.07D. [Doc. 13 at 5].

A claimant has the burden of presenting specific medical evidence to show that his impairment meets or equals a listing. Wilbon v. Comm'r of Soc. Sec., 181 F. App'x 826, 828 (11th Cir. 2006) (citing Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987)). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). In this regard, a claimant must "(1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." Wilkinson, 847 F.2d at 662.

Listing 11.07 provides as follows: "Cerebral palsy. With: A. IQ of 70 or less; or B. Abnormal behavior patterns, such as destructiveness or emotional instability; or C. Significant interference in communication due to speech, hearing, or visual defect; or D. Disorganization of motor function as described in 11.04B." 20 C.F.R. Part 404, Subpart P, App'x 1, 11.07. Listing

18

11.04B provides: "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station...." Id. at 11.04B.

In this case, the ALJ found that Appellant did not meet Listing 11.07 because the evidence failed to document any of the requirements of paragraphs A, B, C, or D. (T. 20-21). Appellant argues that Dr. Harris's records show that Appellant does meet Listing 11.07D because his gait is affected by a right leg limp, lack of tone strength, and muscle atrophy. [Doc. 12 at 3]. But substantial evidence supports the ALJ's conclusion that Appellant did not meet Listing 11.07D. As pointed out by the Commissioner, Dr. Cooper, the consultative examiner, noted that Appellant had only mild atrophy, had normal muscle tone, and had 5/5 strength everywhere but his right hand and right foot drop. [Doc. 13 at 6]; (T. 244). Dr. Cooper also noted that Appellant had a normal gait and "very mild right sided weakness." (T. 243). At the January 2012 visit, Dr. Harris noted that Appellant's strength was 2/5 in his right ankle and that he had an abnormal gait. (T. 302-03). Nevertheless, despite his mild right-sided weakness and abnormal gait, the record shows that Appellant provides childcare for his one-year-old child during the day, drives his other children to daycare, and performs chores around the house, including laundry,

19

cleaning, and mowing. (T. 46-47, 184, 267).

The medical evidence is not sufficient to show that Appellant met Listing 11.07D. In order to "meet all of the specified medical criteria" of Listing 11.07D, the medical evidence must show disorganization in <u>two</u> extremities. <u>Sullivan</u>, 493 U.S. at 530, 110 S. Ct. at 891; <u>see</u> 20 C.F.R. Part 404, Subpart P, App'x 1, 11.07D ("Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station...." (citing Listing 11.04B)). Thus, even assuming that the medical evidence could support a finding that Appellant's cerebral palsy has caused a sustained disturbance in his gait and station due to weakness in his right leg, the medical evidence does not show a second extremity with disorganized motor function.

Furthermore, despite Dr. Harris's singular note that Appellant had decreased sensation to pinprick in his right hand in January 2012, the evidence in the record does not support a finding that this decrease in sensation resulted in a disturbance of gross and dexterous movements. In fact, Dr. Scott Cooper also examined Appellant's extremity strength and found his right hand strength to be "4+/5." (T. 245). Dr. Wallace then concluded, after inspecting Dr. Cooper's consultative examination report, that Appellant could lift fifty pounds occasionally and twenty-five pounds frequently and

20

that Appellant was not precluded from being able to perform the proposed RFC. (T. 248, 252). Appellant has, therefore, not "provide[d] objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement." Wilkinson, 847 F.2d at 662.

Appellant also states that the ALJ erred because he did not "mention [Dr. Harris's] examinations and state specifically any inaccuracies with these findings...." [Id. at 4]. But, in discussing Appellant's RFC, his credibility, and the weight assigned to each medical opinion, the ALJ did, in fact, discuss the results of Dr. Harris's examinations. The ALJ specifically noted that Dr. Harris reported that Appellant had 3/5 and 2/5 strength in his right ankle dorsiflexors and 3/5 and 2/5 strength in the right ankle extensors. (T. 22). The ALJ then compared those findings to the results of Dr. Scott Cooper's consultative examination, where he found that Appellant's strength was 5/5 except in his right handgrip and right foot drop. (Id.). The ALJ also noted the Dr. Cooper deemed Appellant's sensory ability intact while Dr. Harris found decreased sensation to pinprick in the right hand and foot. (T. 23). Nevertheless, despite the varying results from each neurologist's examination, the ALJ concluded that the medical evidence and Appellant's testimony regarding his daily activities, including caring for a one-year-old child, did not support a finding that

21

Appellant met Listing 11.07.

In summary, the undersigned finds that, after reviewing the entire record, substantial evidence supports the ALJ's finding that Appellant's impairments did not meet all of the criteria in Listing 11.07D.

**B.   Did the ALJ Err by Discounting Dr. Harris's Medical Opinion?**

Appellant also argues that the ALJ failed to show good cause when he afforded little weight to Dr. Harris's January 2012 medical opinion. [Doc. 12 at 4]. Appellant submits that Dr. Harris was a treating physician whose medical opinion was entitled to substantial weight. [Id.]. Appellant argues that the medical evidence in the record does not support the reasons provided by the ALJ for discounting Dr. Harris's medical opinion. [Id. at 5-6]. In response, the Commissioner argues that Dr. Harris was not a treating physician and thus not entitled to any deference. [Doc. 13 at 12].[5] Additionally, the Commissioner contends that the ALJ's decision to accord little weight to Dr. Harris's medical opinion is supported by substantial evidence. [Id. at 10].

In making the disability determination, an ALJ is required to consider the opinion evidence of treating and non-treating

---

[5]    At the hearing, counsel for the Commissioner stated that it appeared from the ALJ's decision that in fact he considered Dr. Harris to be Appellant's treating physician.

AO 72A
(Rev.8/82)

physicians. 20 C.F.R. § 404.1527(b). A treating physician's opinion is entitled to considerable weight unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1241-42 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Id. If he rejects a treating physician's opinion, the ALJ must clearly articulate reasons that are supported by substantial evidence. Lewis, 125 F.3d at 1441.

In the event the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider the following factors in determining the weight to assign each medical source opinion:

> (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 892 (11th Cir. 2013) (per curiam); see also §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). But "the ALJ is not required to explicitly address each of those factors" in his written decision. Lawton v.

23

Comm'r of Soc. Sec., 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Generally, a treating physician can give the longitudinal, detailed picture of a plaintiff's medical status that can not be obtained from a consultive examination or a short term or one time evaluation by a non-consultive examination, or any other medical source. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2); see McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (a one-time examiner is not a treating physician); Casher v. Halter, No. 00-CV-0110, 2001 WL 394921, at *12 (S.D. Ala. Mar. 29, 2001) (finding it "questionable" whether physician who saw appellant twice and did not prescribe any treatment was a treating physician); Chaney-Everett v. Astrue, 839 F. Supp. 2d 1291 (S.D. Fla. 2012) (finding doctor who saw appellant only twice did not have an ongoing treatment relationship with appellant and was therefore not a treating source entitled to controlling weight).

In this case, the ALJ accorded little weight to Dr. Harris's January 2012 opinion that Appellant was "not able to be gainfully employed due to both cognitive and physical deficits from his cerebral palsy." (T. 25, 302). Appellant saw Dr. Harris only twice before his February 2012 hearing. (T. 295, 300). In the notes Dr. Harris made during Appellant's January 2012 visit, he stated that Appellant "presented for evaluation of possible disability."

24

(T. 300). While it appears questionable whether Dr. Harris was a treating physician as contemplated by the regulations, the undersigned will assume, as the Commissioner stated at the hearing, that Dr. Harris was a treating physician and that the ALJ treated him as such. But see 20 C.F.R. § 404.1502, 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."); Chaney-Everett, 839 F. Supp. 2d at 1303; Casher, 2001 WL 394921, at *12-13.

Even accepting that Dr. Harris was Appellant's treating physician, the undersigned finds that the ALJ provided specific reasons for assigning little weight to his opinion. The ALJ stated that Dr. Harris "failed to explain the basis of [his] opinion." (T. 25). The ALJ also cited the fact that Dr. Harris rendered his opinion after only two office visits with Appellant. (Id.). Additionally the ALJ noted that Dr. Harris's opinion appeared to be "based largely upon [Appellant's] own subjective reports," "in an attempt to assist [Appellant] in supporting his disability claim." (Id.). The ALJ noted that Dr. Harris's own examination results did not support a conclusion that Appellant's cerebral palsy precluded him from all gainful employment. (Id.).

Indeed, the record evidence supports the ALJ's discount of Dr.

Harris's opinion of total disability. Dr. Harris performed no standardized intelligence testing or other cognitive measurements to assess his mental ability before opining that he had cognitive deficits due to cerebral palsy. (T. 300-03). His physical examination indicated that Appellant had an abnormal gait affected by a right leg limp and a decrease in strength and sensation in Appellant's right leg, but Dr. Harris only recommended that Appellant continue to use an orthotic insert to address his abnormal gait. (T. 302-03). He did not order further neurological testing. In discussing his "assessment" of Appellant, Dr. Harris noted that Appellant had given him only minimal amounts of information and there were limited medical records available on which he could base his opinion. (T. 302). Dr. Harris specifically noted that Appellant was referred to him by his lawyer for the purpose of being evaluated for his disability claim. (T. 295, 300). And, Appellant did not seek any medical treatment for cerebral palsy after his surgery in 1983 until his two visits to Dr. Harris in 2011 and 2012. Moreover, aside from Dr. Harris, no other physician found that Appellant's limitations were disabling. See Turner v. Comm'r of Soc. Sec., 182 F. App'x 946, 949 (11th Cir. 2006) (holding that ALJ did not err, in part because "[e]very medical assessment expressing an opinion about [the claimant]'s capacity, except for one," found the claimant capable of performing the RFC found by the ALJ). Accordingly, the

26

ALJ's decision, which offered "specific justification[s] for discounting" Dr. Harris's opinion that were supported by the record, should not be disturbed on appeal. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Phillips, 357 F.3d at 1240-41 (affirming ALJ's discount of a treating physician's opinion that conflicted with his own treatment records).

The undersigned finds no merit in Appellant's specific arguments attacking the ALJ's treatment of Dr. Harris's opinion. First, Appellant challenges the ALJ's finding that Dr. Harris failed to explain the basis of this opinion. [Doc. 12 at 5]. He contends that Dr. Harris properly based his opinion on his musculoskeletal and neurological examination on Appellant. [Id.]. But, as discussed above, Dr. Harris ordered no diagnostic tests of Appellant's cerebral palsy and performed no cognitive evaluation before concluding that Appellant had both cognitive and physical deficits precluding him from gainful employment. (T. 302-03). Appellant also contends that the ALJ may not rely on his observations that Dr. Harris is assisting Appellant with his disability claim and only saw Appellant twice. [Doc. 12 at 5]. But the Social Security regulations clearly allow an ALJ to consider both of these items as factors in determining whether a physician is classified as "treating" or "non-treating" and the weight each medical opinion deserves. See 20 C.F.R. §§ 404.1502, 416.902 ("We will not consider an acceptable

27

medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source."); §§ 404.1527(c), 416.927(c) ("Generally, we give more weight to opinions from your treating sources [than nontreating sources] .... When we do not give the treating source's opinion controlling weight, we [consider] ... [the] [l]ength of the treatment relationship and the frequency of examination ...."); Forsyth, 503 F. App'x at 892 (listing factors the ALJ may consider in assigning weight to medical opinions). In assessing these factors, the undersigned is mindful that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Mulholland v. Astrue, No. 1:06-CV-2913, 2008 WL 687326, at *13 (N.D. Ga. Mar. 11, 2013) (quoting Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998)). But, as discussed here, the ALJ relied on several specific independent reasons for discounting Dr. Harris's medical opinion, and thus his observation that Dr. Harris appeared to be attempting to assist Plaintiff with his case does not warrant reversal of the decision.

Finally, Appellant appears to disagree with the ALJ's

28

conclusions that Dr. Harris's findings are based largely on Appellant's own subjective reports and fail to support a conclusion that cerebral palsy precludes him from gainful employment. [Doc. 12 at 5-6]. But the undersigned has found the ALJ's reasoning supported by substantial evidence, and "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Further, an opinion on an issue reserved to the Commissioner, including a finding by a physician that a claimant is "unable to work," is not entitled to any "special significance" under this circuit's case law and the applicable regulations. Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742 n.5 (11th Cir. 2011); Kelly v. Comm'r of Soc. Sec., 401 F. App'x 403, 407 (11th Cir. 2010); 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3).

For these reasons, the undersigned finds that the ALJ's decision to accord Dr. Harris's opinion little weight was supported by substantial evidence and, accordingly, should not be disturbed on appeal. Lewis, 125 F.3d at 1440; Moore, 405 F.3d at 1212.

## VIII.
## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner finding Appellant not to be disabled be

AO 72A
(Rev.8/82)

**AFFIRMED**.

The Clerk is **DIRECTED** to terminate the reference of this case to the undersigned magistrate judge.

**SO ORDERED**, this 28th day of April, 2014.

*s/ E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

30